UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
KAYSON PEARSON,

                                            Plaintiff,

-against-

ADAM CANTOR, ET AL.,


                                             Defendants.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**08-CV-789 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Pro se Plaintiff Kayson Pearson brings this action under 42 U.S.C § 1983 against Defendants Officer Adam Cantor, Officer Dennis Cherry, Officer John Cooney, Officer Gerard Dorrian, Sergeant James A. Gorra, and Officer Timothy O'Brien. (Compl. (Docket Entry #1).) Plaintiff alleges that Defendants used excessive force against him while he was a pretrial detainee in state court, in violation of his constitutional rights. Currently before the court is Defendants' Motion for summary judgment, which Plaintiff has not opposed. (Def. Mem. (Docket Entry #43).) For the reasons set forth below, Defendants' Motion is GRANTED.

**I.    BACKGROUND**

On January 19, 2006, Plaintiff appeared in the Supreme Court of the State of New York, Kings County for the second day of his criminal trial. He and his co-defendant Troy Hendrix were standing trial for multiple counts of murder, rape, and kidnapping. (Def. 56.1 (Docket Entry #42) ¶¶ 3, 5.) At some point during the proceedings, Plaintiff attacked his defense attorney with a homemade weapon he had hidden in his pants. (Def. 56.1 ¶ 11.) In the ensuing chaos, according to the Complaint, Plaintiff "sustained physical, emotional, and mental injuries" as the

1

court officers attempted to restore order to the courtroom. (Compl. ¶¶ D-F.) Plaintiff argues that they used excessive force in doing so.

Plaintiff was later charged for this conduct and testified on his own behalf. Therefore, the court has the benefit of Plaintiff's own sworn testimony to establish the events that transpired in the courtroom that day, without the need to resolve disputed questions of fact. Plaintiff testified that he came into court with a plan. He intended to attack his attorney in the hopes of provoking the court officers to fatally shoot him.[1] (Connell Decl. (Docket Entry #41) Ex. B, Trial Transcript ("Tr.") 1224.) He wore a white suit, white tie, white belt, white shoes, and white yarmulke to symbolize purity, "in a spiritual sense," which he considered fitting attire to "walk out of this life." (Tr. 1222-23.) In order to carry out his suicide mission, he had fashioned two makeshift weapons, which he referred to as "shanks." (Tr. 1263-67, 1290.) One consisted primarily of a sharpened piece of plexiglass. (Tr. 1263-64, 1268.) The other was a dismantled eyeglass frame with two pieces of metal sticking out on one side. (Tr. 1264-66, 1268.) He snuck both items into court concealed in his rectum and waited for the right moment to attack. (Tr. 1267.)

That moment arrived around 4 P.M. as the jury was exiting the courtroom. (Tr. 1222, 711.) Plaintiff took the plexiglass shank from his pants, turned toward his lawyer, and "tried to stab him in the neck." (Tr. 1225.) His lawyer attempted to escape, but Plaintiff pursued him: "I pushed my chair back and I got up as well and he tripped to the floor and I was like leaning over him trying to stab him again and stuff like that." (Id.) As Plaintiff struggled with his lawyer, two court officers approached him in an effort to intervene. (Id.) One of the officers hit Plaintiff in the hand with a chair, causing him to drop the shank. (Id.) In retaliation, Plaintiff pulled out

---

[1] He chose his attorney as his victim because they "had a dispute and also because he was closest to me." (Tr. 1268.) If the district attorney had been standing closer, Plaintiff would likely have attacked him instead. (Id.)

2

his metal shank and began to attack the officer who had hit him, as the second officer tried to grab Plaintiff to subdue him:

> I stabbed the court officer who had the chair originally. I stabbed him in the neck with it and then they grabbed my hand and we were struggling, wrestling at first and they took me down, took me down pretty much and tried to cuff me. I was – they would give me a couple punches to the face and some to the ribs and stuff like that and then they got the cuffs on and, you know, a couple of kicks and punches and some racial slurs here and there. And then after that, I am laying there on the floor. They cuffed my legs, my ankles and stuff like that and then they just – they just started to rip my clothes off me.

(Tr. 1225-26.)

Once Plaintiff was subdued, he was taken to a local hospital. Plaintiff grinned at the photographers as he was wheeled out of the courthouse on a gurney. (Tr. 1283; Connell Decl. Ex. D, Newspaper Photograph.) Plaintiff testified that he had been having a good time in court. (Tr. 1283.) In fact, he described the courtroom attacks as "the most fun I had in all my life." (Connell Decl. Ex. E, Sentencing Transcript 10.) Plaintiff took great pleasure in undermining the judicial system, as well as terrorizing the judge and court officers:

> Because it is fun to see a system that is supposed to have so much power and control just lose it in a split second. The Judge, the court officers all with a look of fear on their face. The Judge, the one with all the power, running away. The court officers who are supposed to keep order in the court, running into each other, injuring themselves trying to maintain order. Yes, it was fun to see all this happen. . . . I take pride in the fear I cause all of you. That day, January 19, 2006, was the most fun I had in all my life. That's why I was smiling that day when I left this courtroom.

(Id.)

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate where there are no genuine issues of material fact. See Fed. R. Civ. P. 56(c). The burden to show the absence of a genuine factual dispute falls on the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). A dispute regarding a

3

fact is genuine if the evidence is such that a reasonable finder of fact could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material when it "might affect the outcome of the suit under the governing law." Elec. Inspectors, Inc. v. Vill. of E. Hills, 320 F.3d 110, 117 (2d Cir. 2003). In evaluating a motion for summary judgment, the court is required to "view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments . . . ." Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996) (citations omitted).

Even where, as here, the non-moving party does not respond to the motion for summary judgment, the court may not grant the motion by default. Although the non-movant's failure to respond "may allow the district court to accept the movant's factual assertions as true, the moving party must still establish that the undisputed facts entitle him to a judgment as a matter of law." Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004) (internal citations and quotation marks omitted). Accordingly, in reviewing a motion for summary judgment – even one that is unopposed – the court must "determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." Id. (internal quotation marks omitted).

**B.    Excessive Force**

The Fourteenth Amendment's Due Process Clause protects pretrial detainees from the use of excessive force amounting to punishment. Bell v. Wolfish, 441 U.S. 520, 535 (1979). To demonstrate a constitutional violation in this context, a plaintiff alleging a claim of excessive force must establish both an objective and subjective element. United States v. Walsh, 194 F.3d 37, 49-50 (2d Cir. 1999). The objective element requires that the forced allegedly used was

"sufficiently serious or harmful enough to be actionable." Id. at 50. The amount of force used must have been more than de minimis, unless it was "repugnant to the conscience of mankind." Hudson v. McMillian, 503 U.S. 1, 9-10. The subjective element "requires a showing that the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct." Sims v. Artuz, 230 F.3d 14, 21 (2d Cir. 2000). The crucial question in this respect is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 21 (quoting Hudson, 503 U.S. at 7).

Even accepting Plaintiff's version of events, as revealed through his sworn testimony, the court finds that Defendants did not use excessive force in responding to Plaintiff's outrageous behavior. By his own admission, Plaintiff attacked his attorney for the express purpose of provoking a lethal response from the court officers. When the officers attempted to subdue him, he resisted, posing a continuing danger. He brandished not just one, but two sharp implements while struggling with the officers and attempting to stab them in their necks. Plaintiff did not testify that the officers continued to punch, kick, or hit him after he was fully restrained. Under the circumstances, the court has no difficulty concluding that the officers responded reasonably and in good faith to the disruption Plaintiff intentionally created. They acted swiftly in an effort to restore order to the courtroom and ensure the safety of all those present, rather than "maliciously and sadistically to cause harm." Id. at 21. Because Plaintiff cannot establish the subjective element of his excessive force claim, it fails as a matter of law. Accordingly, the court grants Defendants' Motion for summary judgment.

## III. CONCLUSION

As set forth above, Defendants' Motion for summary judgment is GRANTED. The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and, therefore, in forma pauperis status is denied for the purpose of any appeal. Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
August 23, 2010

NICHOLAS G. GARAUFIS
United States District Judge